# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. _____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RICHARD W. DAVIS, JR., ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DCG REAL ASSETS, LLC ) | **COMPLAINT** |
| DCG COMMERCIAL FUND I, LLC ) | |
| H20, LLC ) | |
| DCG PMG, LLC ) | |
| DCG PMF, LLC ) | |
| FINELY LIMITED, LLC ) | |
| DCG FUNDS UNDERWRITING, LLC ) | |
| DCG ABF MANAGEMENT, LLC ) | |
| DCG FUNDS MANAGEMENT, LLC ) | |
| DAVIS CAPITAL GROUP, INC. ) | |
| DAVIS FINANCIAL, INC. ) | |
| DCG COMMERCIAL HOLDINGS, LLC ) | |
| DCG COMMERCIAL, LLC ) | |
| DCG PARTNERS, LLC ) | |
| DCG REAL ESTATE DEVELOPMENT, LLC ) | |
| HUNTERSVILLE PLAZA PHASE ONE, LLC ) | |
| HUNTERSVILLE PLAZA PHASE TWO, LLC ) | |
| NORTH LAKE BUSINESS PARK, LLC ) | |
| RICHARD DAVIS ENTERPRISES, LLC, ) | |
| ) | |
| Relief Defendants. ) | |
| ) | |

Plaintiff Securities and Exchange Commission alleges as follows:

## I. INTRODUCTION

1. The Commission brings this action to enjoin Defendant Richard W. Davis, Jr. ("Davis") from violating the registration and antifraud provisions of the federal securities laws. From no later than January 2008 through at least February 2015, Davis, acting through two unregistered pooled investment vehicles – DCG Real Assets, LLC (f/k/a DCG Real Estate Holdings, LLC, and DCG Alternatives, LLC) ("Real Assets"), and DCG Commercial Fund I, LLC (f/k/a Aegis Asset Backed Funds, LLC, Aegis/DCG Asset Backed Fund, LLC, and DCG Asset Backed Funds, LLC) ("Commercial Fund") – raised at least $11.5 million from at least 85 investors through the unregistered sale of securities in Real Assets and the Commercial Fund.

2. While soliciting investments in the securities, Davis stated that he planned to invest the investors' money in a variety of "hard assets," such as real estate or mineral rights.

3. However, while managing the funds, Davis routinely caused Real Assets and the Commercial Fund to enter into business transactions with certain of the Relief Defendants, which he owned and/or controlled, and failed to specifically disclose the existence of these conflicts of interest to all investors. He also caused money to be transferred away from Real Assets into bank accounts of the Relief Defendants, without specifically disclosing to investors that he would do so. From these other bank accounts, Davis routinely used the money to satisfy certain business expenses. Not all of these expenses were related to the investment strategy of the fund. Additionally, Davis received direct and indirect payments from Real Assets and these amounts were in excess of the management fee he was entitled to under Real Assets' offering materials.

4. As a result of the conduct alleged in this Complaint, Davis violated Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e and 77q(a); Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and

17 C.F.R. § 240.10b-5; and Sections 206(1), 206(2), and 206(4) and Rule 206(4)-8 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4), and 17 C.F.R. § 275.206(4)-8. Unless restrained and enjoined, Davis is reasonably likely to continue to violate the federal securities laws.

5. The Commission therefore respectfully requests the Court enter: (i) a permanent injunction restraining and enjoining Davis from violating the federal securities laws; (ii) an order directing Davis and Relief Defendants to pay disgorgement with prejudgment interest; (iii) an order directing Davis to pay a civil money penalty; and (iv) an order appointing a receiver over the Relief Defendants.

## II. DEFENDANT AND RELIEF DEFENDANTS

6. Davis, age 39, is a resident of Charlotte, North Carolina. During the relevant time period, Davis operated DCG ABF Management, LLC ("DCG ABF Management") and DCG Funds Management, LLC ("DCGFM"), through which he managed the Commercial Fund and Real Assets, respectively. Davis, DCG ABF Management and DCGFM have never been registered as investment advisers with the Commission.

7. The Commercial Fund and Real Assets are unregistered "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act, 17 C.F.R. § 275.206(4)-8(b), which were managed by Davis during the relevant time period. The Commercial Fund was created on or around September 19, 2007 (as the Aegis Asset Backed Fund, LLC) and Real Assets was created no later than June 29, 2007 (as DCG Real Estate Holdings, LLC), although it was not converted into an investment company until at least August 24, 2009.

8. H20, LLC ("H20") is a Wyoming limited liability company formed in 2014 by Davis. It was purportedly formed to invest in water-producing real estate. At formation, Davis

Financial held a 92% interest in the distributions of H20. Real Assets held a right to the remaining 8% of distributions.

9. DCG PMG, LLC ("PMG") is a North Carolina limited liability company. It was formed prior to 2010, and previously was named El Conquistador Holdings, LLC. It was used by Davis to make investments in precious metal resources. It wholly owns DCG PMF, LLC.

10. DCG PMF, LLC ("PMF") is a North Carolina limited liability company formed in 2010. It is wholly owned by PMG and was used to operate certain mining activities.

11. Finely Limited, LLC ("Finely") is a Wyoming limited liability company formed in 2015. It was formed by Davis and certain investors of Real Assets in order to obtain real estate owned by NLBP.

12. DCG Funds Underwriting, LLC ("DCG Funds Underwriting") is a North Carolina limited liability company formed prior to 2008. It acted as the purported underwriter of Real Assets and Commercial Fund.

13. DCG ABF Management is a North Carolina limited liability company formed in 2008 by Davis. It is the fund manager of the Commercial Fund and is beneficially owned by Davis.

14. DCGFM is a North Carolina limited liability company formed in 2008 by Davis. It is the fund manager of Real Assets and is beneficially owned by Davis.

15. Davis Capital Group, Inc. ("Davis Capital") is a North Carolina corporation formed in 2004 by Davis. It is wholly owned by Davis and purports to be a private real estate capital investment company.

16. Davis Financial, Inc. ("Davis Financial") is a North Carolina corporation formed in 2000 by Davis. It purports to provide financial advisory services to professional athletes. It is wholly owned by Davis.

17. DCG Commercial Holdings, LLC ("DCG Commercial Holdings") is a North Carolina limited liability holding company formed in 2008. It is beneficially owned by Davis.

18. DCG Commercial, LLC ("DCG Commercial") is a North Carolina limited liability company formed in 2008. It is beneficially owned by Davis.

19. DCG Partners, LLC ("DCG Partners") is a North Carolina limited liability company formed prior to 2008. It is beneficially owned by Davis.

20. DCG Real Estate Development, LLC ("DCG Real Estate Development") is a North Carolina limited liability company formed prior to 2008. It is beneficially owned by Davis.

21. Huntersville Plaza Phase One, LLC ("HPP1") is a North Carolina limited liability company formed in 2008 by Davis. Davis owns at least 34% of HPP1. It was formed in connection with the development of an empty lot in Huntersville, North Carolina.

22. Huntersville Plaza Phase Two, LLC ("HPP2") is a North Carolina limited liability company formed in 2009 by Davis. It is partially owned by Davis. HPP2 filed for bankruptcy on April 30, 2014. It was formed in connection with the development of an empty lot in Huntersville, North Carolina.

23. North Lake Business Park, LLC ("NLBP") is a North Carolina limited liability company formed in 2005 by Davis. Davis is believed to own at least 50% of NLBP. It was formed in connection with the development of an empty lot in Huntersville, North Carolina.

24. Richard Davis Enterprises, LLC ("RDE") is a North Carolina limited liability company formed in 2010 by Davis. It purports to be a corporate leasing company.

### III. JURISDICTION AND VENUE

25. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); Sections 21(d) and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa(a); and Sections 209 and 214 of the Advisers Act, 15 U.S.C. §§ 80b-9 and 80b-14.

26. The Court has personal jurisdiction over Davis and Relief Defendants, and venue is proper in this District, because, among other things, Davis offered or sold securities to investors in this District and because Davis and some or all of the Relief Defendants reside and/or have their principal places of business in Charlotte, North Carolina. In addition, venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Commission's claims occurred here.

27. In connection with the conduct alleged in this Complaint, Davis, directly and indirectly, singly or in concert with others, has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

### IV. FACTUAL BACKGROUND

28. Davis managed the Commercial Fund and created and managed Real Assets, and solicited investments from investors primarily in the Charlotte, North Carolina region. A majority of the investors were individuals with retirement accounts, such as individual retirement accounts ("IRAs") or "401k" accounts.

29. Davis instructed the investors with existing retirement accounts to "roll-over" their accounts into his funds. To do this, investors liquidated their existing accounts and

transferred the funds to a custodial trust account. The custodian promptly transferred the funds to an account in the name of the funds or their underwriter.

30. Davis raised at least $1.7 million from at least 20 investors for the Commercial Fund.

31. Davis told prospective investors of the Commercial Fund that he intended to invest the fund's capital in short term fully secured loans to real estate developers. He failed to inform all of the investors, however, that in two out of the four projects the fund invested in (NLBP and HPP1), the real estate developers on the other side of the transactions were companies owned and operated by Davis himself. Davis took no steps to ameliorate this inherent conflict of interest.

32. Davis raised at least $9.8 million from approximately 65 investors for Real Assets.

33. Davis told prospective investors of Real Assets that he intended to invest the fund's capital in "hard" assets such as real estate and natural resources. He failed to inform all of the investors that, like the Commercial Fund, Real Assets also repeatedly entered into transactions with certain of the Relief Defendants.

34. Of the $9.8 million of investor funds Davis received into Real Assets' bank account, he transferred at least $7.7 million to bank accounts of the Relief Defendants. Davis never disclosed that the funds would be handled this way and in doing so violated his fiduciary duty to the fund.

35. From the accounts of the Relief Defendants, the money was either spent or transferred onward, typically to another Relief Defendant, where it was spent or transferred, and so on until ultimately all of the $7.7 million in investor funds was transferred away from the

accounts or otherwise spent for business expenses or to accounts Davis controlled. The bank accounts that received these investor funds were used, in part, for personal expenses of Davis. Davis did not disclose to investors that he would commingle their investments in this manner.

36. Davis received directly and indirectly at least $1.5 million from the Davis-owned accounts that received investor funds from 2006 to 2015 or as stated above.

37. Under the terms of the offering documents of Real Assets, Davis was entitled to a management fee of .125% of assets under management to be assessed and paid quarterly. Davis failed to assess and withdraw this fee according to the required procedures. Nonetheless, had he done so, he would have been entitled to less than $150,000 in management fees over the entire period of time he managed the fund.

38. In connection with soliciting investments in Real Assets, neither Davis nor the offering documents adequately disclosed the vast majority of the funds invested into the fund would be transferred to bank accounts of entities in which Davis held an ownership stake, or to entities owned by Davis himself, and subsequently spent.

39. Davis also misrepresented his professional credentials when soliciting investments by claiming to be a Registered Financial Consultant, which he was not.

40. In addition, since 2010, Davis has reported to investors in the Commercial Fund via their IRA custodian that their investment has not lost any value. This is notwithstanding the fact that the primary assets held by the Commercial Fund are loans that have been in default for years. Davis caused the fund to foreclose on at least one of these loans. Davis failed to reappraise the value of the fund's investment in light of this.

41. Since the inception of Real Assets, Davis reported to investors that their investments were growing year-after-year. However, Davis based this purported growth on

- 8 -

Case 3:16-cv-00285-GCM   Document 1   Filed 06/02/16   Page 8 of 16

speculative valuations of the fund's underlying investments and failed to specifically tabulate a true net asset value for the fund.

42. In a video presentation prepared for investors in March 2015, Davis also stated of Real Assets that "undeniably, 100%, hands down, yes, we have in excess of $10 million worth of assets." Davis based this statement on speculative valuations of the investments and failed to reflect that in most cases the fund only held partial ownership of those investments. The video presentation was used to update investors and to solicit additional funds.

43. Neither the Commercial Fund nor Real Assets registered any offerings of its securities with the Commission.

44. Davis solicited investments from unaccredited investors via general solicitation. Davis failed to provide these unaccredited investors with audited financial statements at the time of their purchase. In the case of Real Assets, Davis never obtained an audit notwithstanding the statements in the offering documents that he would. Further, Davis failed to take the necessary steps to determine whether the unaccredited investors were capable of evaluating the merits and risks of the investment, which they were not.

45. From no later than 2008, as described above, as a result of Davis' actions, each of the Relief Defendants received directly or indirectly investor funds. Accordingly, it is necessary for a receiver to, among other things, marshal the funds in an orderly fashion and determine whether and to what extent the funds may be repaid to investors.

**FIRST CLAIM FOR RELIEF**

**SALE OF UNREGISTERED SECURITIES**
**(Violations of Sections 5(a) and 5(c) of the Securities Act)**

46. The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

47. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint and no exemption from registration exists with respect to these securities and transactions.

48. From no later than January 2008 until at least February 2015, Davis directly and indirectly, (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (b) carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, any securities without a registration statement having been filed or being in effect with the Commission as to such securities.

49. By reason of the foregoing, Davis violated, and, unless enjoined, is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## SECOND CLAIM FOR RELIEF

### FRAUD IN THE OFFER OR SALE OF SECURITIES
### (Violations of Section 17(a) of the Securities Act)

50. The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

51. From no later than January 2008 until at least February 2015, Davis, in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    employed any device, scheme or artifice to defraud;

(b) obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

(c) engaged in transactions, practices and courses of business which operated or would have operated as a fraud or deceit upon the purchasers and prospective purchasers of such securities.

52. By reason of the foregoing, Davis violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

### THIRD CLAIM FOR RELIEF

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)

53. The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

54. From no later than January 2008 until at least February 2015, Davis directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, in connection with the purchase or sale of any security:

(a) employed any device, scheme or artifice to defraud;

(b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

(c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon any person.

55. By reason of the foregoing, Davis violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5.

## FOURTH CLAIM FOR RELIEF

### INVESTMENT ADVISER FRAUD
### (Violations of Section 206(1) and 206(2) of the Advisers Act)

56. The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

57. From no later than January 2008 until at least February 2015, Davis acted as an investment adviser to the Commercial Fund and Real Assets within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). For compensation, he engaged in the business of advising hedge funds and their investors as to the value of securities and as to the advisability of investing in, purchasing, or selling securities.

58. By engaging in the conduct described in this Complaint, Davis, by the use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

 (a) employed any device, scheme or artifice to defraud any client or prospective client; and/or

 (b) engaged in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client.

59. By reason of the foregoing, Davis violated, and, unless enjoined, is reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and (2).

# FIFTH CLAIM FOR RELIEF

## INVESTMENT ADVISER FRAUD
### (Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder)

60. The Commission repeats and realleges Paragraphs 1 through 45 of its Complaint.

61. From no later than January 2008 until at least February 2015, Davis acted as an investment adviser to the Commercial Fund and Real Assets within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). For compensation, he engaged in the business of advising hedge funds and their investors as to the value of securities and as to the advisability of investing in, purchasing, or selling securities.

62. From no later than January 2008 until at least February 2015, Real Assets and the Commercial Fund were "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act, 17 C.F.R. § 275.206(4)-8(b).

63. By engaging in the conduct described in this Complaint, Davis, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

   (a) made any untrue statement of a material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in Real Assets and the Commercial Fund; and/or

   (b) otherwise engaged in any act, practice or course of business that was fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in Real Assets and the Commercial Fund.

- 13 -
Case 3:16-cv-00285-GCM   Document 1   Filed 06/02/16   Page 13 of 16

64. By reason of the foregoing, Davis violated, and, unless enjoined, is reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8 of the Advisers Act, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find Davis committed the violations alleged, and:

### I.

### Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Davis from violating the federal securities laws alleged in this Complaint.

### II.

### Disgorgement

Issue an Order directing Davis and Relief Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### III.

### Penalties

Issue an Order directing Davis to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

## IV.

## **Appointment of a Receiver**

Issue an Order, upon motion of the Commission, appointing a receiver over the Relief Defendants.

## V.

## **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

## VI.

## **Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action and over Davis and Relief Defendants in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

DATED: June 2, 2016            Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By: /s/ Patrick R. Costello

Patrick R. Costello (Florida Bar No. 75034)
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549-5985
Telephone: (202) 551-3982
Fax: (202) 772-9245
Email: costellop@sec.gov

OF COUNSEL:

Christopher R. Mathews (District of Columbia Bar No. 489952)
Division of Enforcement
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549
Telephone: (202) 551-7000
Facsimile: (202) 772-9245