IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:16-CV-285

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD W. DAVIS, JR.,<br><br>Defendant,<br>and<br><br>DCG REAL ASSETS, LLC, *et al.*,<br><br>Relief Defendants. | **CONSENT ORDER REGARDING ALLOCATION OF NET PROCEEDS FROM SALE OF PROPERTY AT 9137 MOUNT HOLLY-HUNTERSVILLE RD, HUNTERSVILLE, NC** |

This matter comes before the Court upon the consent of A. Cotten Wright, the duly appointed receiver (the "Receiver") in this case and Madhusudan Babulal Shah and Bina Madhusudan Shah (the "Shahs"), through their respective counsel, as to the allocation of the net proceeds from the sale of real property located at 9137 Mount Holly-Huntersville Road, Huntersville, North Carolina (the "Property"). The Receiver and the Shahs hereby show the Court, and the Court hereby finds and holds after a review of the record in this cause, as follows:

1. On June 8, 2016, the Receiver was appointed as the temporary receiver for a number of entities created and controlled by Richard W. Davis, Jr. ("Davis"), including Davis Financial, Inc. ("DFI") (Doc. No. 8). On August 5, 2016, the Receiver became the permanent receiver for DFI (Doc. No. 48).

2. Before this case was filed, DFI held title to the Property as a tenant in common with the Shahs. In a series of deeds, Davis caused DFI to grant the Shahs increasing interests in the Property. The pertinent deeds (collectively, the "Deeds") are: (1) a deed dated 10/30/2006 and

1

recorded on 2/20/2007 conveying a 38% interest in the Property and a neighboring parcel to the Shahs; (2) a deed dated 12/14/2010 and recorded on 12/17/2010 conveying the Shahs' interest in the neighboring parcel to DFI; (3) a deed dated 12/14/2010 and recorded on 12/17/2010 conveying a 17% interest in the Property to the Shahs; and (4) a deed dated 12/15/2010 and recorded on 6/5/2014 conveying a 13% interest in the Property to the Shahs (the "13% Deed").

3. Based on the Deeds, the Shahs have claimed to hold a 68% interest in the Property.

4. The Receiver is informed and believes that, notwithstanding the transfer of ownership interests in the Property to the Shahs, DFI paid all the carrying costs associated with the Property, including real property ad valorem taxes for past years.

5. The Deeds state on their face that there was no taxable consideration for each transfer of interests in the Property to the Shahs. Further, it appears that the 13% Deed was back-dated because Davis did not begin using the address shown for DFI on the 13% Deed until 2012 or 2013. Therefore, it appears that the 13% Deed was a gift deed that was not recorded within the two-year time frame proscribed by N.C. GEN. STAT. § 47-26. The Receiver also has taken the position that the 13% Deed is avoidable pursuant to North Carolina's Uniform Voidable Transactions Act, N.C. GEN. STAT. §§ 39-23.1 *et seq.*, as either constructively or actually fraudulent as to DFI's other creditors. Therefore, the Receiver has taken the position that the Shahs' interest in the Property should be limited to 55%.

6. The Receiver first learned of DFI's interest in the Property in late 2016. Thereafter, the Receiver and the Shahs agreed that the Property should be marketed for sale. During the period that the Property was on the market, the Receiver paid all the costs of maintaining and repairing the Property as well as the advertising expenses required in order to conform to the sale procedures in this case (the "Receivership Expenses"). The Receivership Expenses totaled $7,226.65.

7. On November 17, 2017, the Court entered its *Amended Order Granting Motion for Authority to Sell Real Property Free and Clear of Liens – 9137 Mount Holly-Huntersville Rd.* (Doc. No. 158) authorizing the sale of the Property for a gross sale price of $140,000.00. After deducting the costs of the sale, realtor commissions and taxes due on the Property, the net sale proceeds totaled $126,380.20. In addition to the net sale proceeds, the receivership retained $1,000.00 in earnest money provided by a defaulting buyer before the sale. Thus, a total of $127,380.20 in net receipts was realized with respect to the Property (the "Proceeds"). The Receiver has held the Proceeds in the receivership account pending a determination as to their allocation.

8. Deducting the Receivership Expenses from the Proceeds results in a net of $120,153.55 (the "Net Proceeds").

9. The Receiver and the Shahs have negotiated as to the appropriate allocation of the Proceeds and the Receivership Expenses and, subject to the Court's entry of this Order, agreed to settle on the following terms (the "Agreement"):

(a) The Receiver will not pursue recovery from the Shahs of their share of prior years' carrying costs paid by DFI, including property taxes.

(b) The Shahs' ownership interest in the Property and the Proceeds therefrom shall be set at 55%.

(c) The Receiver's ownership interest in the Property and the Proceeds therefrom shall be set at 45%.

(d) The Receivership Expenses shall be allocated to the Shahs and the Receiver in accordance with their respective ownership interests.

(e) Based on the allocation of the ownership interests, the Receiver shall disburse to the Shahs 55% of the Net Proceeds for the total sum of $66,084.45.

(f) Based on the allocation of the ownership interests, the Receiver shall retain for the receivership estate 45% of the Net Proceeds for the total sum of $54,069.10.

IT IS, THEREFORE, ORDERED that:

1) Pursuant to the Agreement and paragraph 9(e) above, the Receiver is authorized to disburse to the Shahs 55% of the Net Proceeds, *i.e*., $66,084.45; and

2) Pursuant to the Agreement and paragraph 9(f) above, the Receiver is authorized to retain for the receivership estate 45% of the Net Proceeds, i.e., $54,069.10.

**SO ORDERED.**

Signed: December 15, 2017

Graham C. Mullen
United States District Judge